Good morning. May it please the Court, my name is Kari Hong. I'm appointed pro bono counsel from the Florence Project. I represent petitioner Ulysses Novoa-Galicia, whom I will refer to as Mr. Novoa. I will reserve two minutes for rebuttal and I will watch my time. I'm going to talk about three pathways by which this Court can resolve this case. Probable cause, particularly serious crime, and then cap. Starting with probable cause, the government concedes that an anonymous tip on this record is insufficient to support probable cause because it only indicates that Mr. Novoa had a criminal record. Or a hog or a hog he holds that negative searches from databases are also insufficient to support ICE's arrest and detention of a non-citizen. This, in combination, is enough for Mr. Novoa to meet his burden, to establish that the ICE officer's targeting detention and arrest was without probable cause. The burden then shifts to the government to provide a lawful explanation for its actions. The government, in its briefing, offers post hoc speculation to explain how Mr. Novoa's birth country is enough information. However, the report that the government cites in its appellate brief was created on June 27th, 2019. That is after the June 5th, 2019 arrest and that place of birth came from the I-213 document itself. Second, on form 213, the two ICE officers only stated that they targeted Mr. Novoa because, quote, an anonymous tip was that he was on parole. If the officers had believed he was born in Mexico or lacked a social security number, they would have put that into the reason as to why he, quote, came to the attention of ICE. I'm going to ask you, so on the tip, I mean, I think everyone agrees it's not sufficient. Is there at least anything to it in the sense that ICE was contacted about somebody? The government seems to be indicating, we can infer from that, that they were contacted because there was questions about his immigration status because that's who you contact if you have a question or concern about that. If the anonymous tip had been about his lawful status, that would have been enough. But on this record, it was related to the fact that he was on parole for a state criminal conviction. But how about just the fact of it going to ICE? I mean, doesn't that itself suggest that there's some immigration-related reason for the tip being made? The case law says that has to be on the record. And the regulations also provide there have to be a specific articulable fact that that actually exists. And Ora Hogby is a great example to show why the fact, the author of that tip, the person who provided the tip, is significant. Because on that record, the bank teller, Karen Moose, basically reported every single Nigerian customer to ICE and asked every single Nigerian customer to be investigated by ICE. That's why the U.S. Clark case says that anonymous tips are simply not enough. As another significant fact on this record is that before the immigration judge, the DHS attorney was given an opportunity to submit evidence, other evidence, of alienage other than the I-213. This is at page AR-138. The DHS attorney said she'd look into it and never provide it. This is a very unique record, then, in which there is no other independent evidence of alienage other than Mr. Novo's statements that he provided after being approached by ICE. Can you address one of the database reports, I think it's AR-1659, and it seems to show it's a place of birth, P-O-B-M-X, which I assume is Mexico, and then S-O-C, I guess, which I think is Social Security, it's blank. Why isn't that enough for probable cause if someone was born outside the United States and doesn't have a Social Security number? At the was produced after his arrest. There's no evidence showing that that information was obtained by the ICE officers before. Further, ICE, under the regulations and under the Fourth Amendment, have to have a specific articulable fact before approaching him. And the ICE officers themselves, under their own testimony, never provided what that was. They only said it was an anonymous tip that he was on parole from the state court. I'm looking at the database here. I mean, I know it's printout is there, probably that's when it was printed out, but it seems like that information, it says date entered 6-24-2004. It looks like based on his earlier arrest, and I understand it's a later date, it's a database, you can't go back in time and print out a database as it information. Set aside, this was printed later. Would that be enough for probable cause to say, you know, someone's not born in the United States and he or she lacks a Social Security number? If the ICE officers had been aware of it and actually cited to it, on this record, they never said that that was the case in the I-213, and the DHS attorney before the immigration judge never said it. And more important, here, Mr. Nova's attorney, you know, issued a subpoena asking them to testify. She sent an email asking for them to be available. They refused. She then filed for a subpoena. And again, the ICE officers refused. This is different from the Orohagvi case, where the ICE officers testified as to what the reason for approaching him was. They had that opportunity. The question is simply, can they meet their burden of providing a lawful explanation? And they refused that opportunity. And that's what makes this fact significant, which is why a post-ad hoc, you know, recreation of the record is not adequate when there was, they should have provided testimony under oath, and they refused to do so. This information was sufficient, but not in this case because no one testified that they knew about it before the arrest. Is that what you're saying? Yes. On the I-213, the ICE officers never cited to it. They only said they relied on an anonymous tip. And then before the immigration judge, they refused to provide any information. The DHS attorney also provided no independent evidence of alienage. So do you agree that the ICE officers did know he was born in Mexico? No, there's no showing of that. They never provided that in the I-213, and there's no showing that, and they refused to testify. How about just on the fact of the databases that were searched, though, like the NCIC and the TECS, wouldn't those show where he was born? The I-213 at 1824, immigration record, there's one notation that says negative. And then at 1825, there's the listing of the five records that were checked before they were issued. It says the two positive from the TECS and the ERM, or I'm sorry, from the TECS and the NCLEX, that's the criminal databases. The three immigration databases, the claim, the CIS, and the ERM, all say negative. And as an officer of the court, after 20 years of these cases, I can verify that there are other situations where they will record, a removal order will record where they are from. There's more information usually on this database. But here, three not enough. And the reason why it's not enough is that there's a 30 percent error rate, that the databases are good for only 15 years, where records before 15 years are destroyed. And also, as Sanchez also recognizes, is that every natural-born citizens, their information is not in this database. So that is why, under this court's case law, a negative database search alone is not enough for probable cause. And I guess the question I would ask is that you're, you know, it's not alone enough, but what about when you add to that searches of databases that indicated he was born in Mexico and the anonymous tip? When you kind of combine those, even if each of them on their own is not sufficient, could it be that all of them taken together, at least enough to establish probable cause? Not on this record, because the anonymous chip was only that he has a criminal conviction. That doesn't provide anything about alienage. The database about negative searches under the, or, excuse me for the pronunciation, the O case, that is not enough. And then third, about the proof of Mexico, there's no showing that the ICE officers themselves knew about that. There's a question about when that database report in the record even existed. And we know for a fact, though, that the ICE officers never relied on it. In the 213, they never said they knew that the DHS office, the attorney never said that. And they refused an opportunity to testify and actually quash the subpoena. Let's assume you're right about all this, then what happens? What's the remedy here? If you agree with me, the proper remedy under the O case is termination. Under Sanchez, they were given an opportunity on remand, but here, by contrast, they quashed the subpoena. They had that opportunity already, and they refused to take advantage of it. So under the O case, termination is proper. And the court does not need to reach any other issue, if it agrees with me, on these matters. If the court disagrees, we have the particularly serious crime and the CAT claim. On the particularly serious crime issue, the IJ claimed there was no evidence that Mr. Nova mental illness existed before August 2018. When that was brought before the BIA, the BIA said, well, sure, the expert recorded that his psychosis started in 2016, but the BIA can ignore expert evidence. But we have more than just the expert report. What we have is jail records from August 17, 2016, that shows psychosis from November 8 to November 12, 2016. We have medical records from the USC hospital reported that he was hearing voices. That's at 1042. On January 5, 2018, he was arrested, and two days later, the jail officials themselves sent them back to the medical center because he was acting erratically. Going back to the issue of the databases, I mean, shouldn't we, if we're not, the I213 doesn't mention whether they checked the database. Isn't there a more prudent course, remand it back and figure that out? Because I213 may not mention it, but it doesn't say we only relied on the tip and we didn't do anything else. Shouldn't we remand that and get a better factual record on that? When this was before the IJ, that is the remedy that Mr. Nova's attorney asked for and actually went so far as to requesting a subpoena. The DHS attorney opposed the motion to terminate, opposed the subpoena, and opposed all efforts to have those attorneys or ICE officers testify. The government has to be held to its choices. The government had an opportunity to develop the record as it has in the other cases. Here, the record or the government refused to do so, which is why it is inefficient and a waste of resources to send this back down, to let them have a do-over, which they actively opposed and refused to do before. For the remedy in the case, does it matter whether the violation was egregious or not? And was there no finding on that? Yes, Your Honor. For egregious, the standard under the Ninth Circuit case law is simply, did the officers know that they lacked probable cause or would a reasonable officer believe that they didn't have a probable cause to approach Mr. Nova in these circumstances? And there's no finding on that at this point. And so if you disagree with me that the government should have another opportunity, we would not oppose remand in that circumstances. Does the egregious test apply to the regulatory violation? Yes. And I don't mean to misstate my brother's position, but I think we're both in agreement that the regulatory standard and the Fourth Amendment are the same in this context, because the regulations are codifying the Fourth Amendment. And under the case law, we do have, first of all, did the violation occur and was it egregious to determine what the remedy is? So if it were remanded, you would argue that the violation was egregious, correct? Well, at that point, the officers would then have an opportunity to testify, which they refused before, and based on what their testimony was, would determine what the next steps in the argument would be. Presumably, you would say, well, we shouldn't even get to this egregiousness issue because the government essentially forfeited a way of this by its conduct before the IJ. But if we get past that, there's an egregiousness question. Yes, Your Honor. I see two different pathways for the court to resolve it. I mean, they could say the government had a chance and therefore, termination is proper. But if the court disagrees and wants to be more prudent, they could remand it and then let the ICE officers testify as to what information they had prior to the arrest. If they're willing. But then that would then foreclose the issue. If they refuse to testify, then they absolutely wouldn't meet their burden. And if there are no further questions. Great. I think you have 45 seconds, but we'll give you two minutes. Thank you. May it please the court. Robert Tennyson for the government. I think a lot of this can be just set aside by Gonzalez. I mean, it's blackmailer law that probable cause can be established by reference to a database unless that database or set of databases is unreliable. And it's up to ICE. And the I-213 said that based upon, they checked the databases and based upon the five databases they checked, CIS claims, TECS, NCIC, and I guess it's what, PIA-QR, which is the person-centric query system. So PCQS. Checking those five databases, they established identity, alienage, removability, and probable cause. Flat statement. And that is afforded some presumption of reliability. But they checked the databases. They said they found probable cause from it. And unless the petitioner was able to come in and establish in some way, form, or fashion the unreliability of those databases, either in his specific case by saying, look, I'm an LPR, or look, I am a citizen of the United States, or some other form of status, or alternatively come in and say, provided evidence, specific evidence, that those databases were unreliable. And by unreliable, I don't mean simply that, you know, certain, that after a certain period of time records fall out, say 15 years with CIS, or that there are occasional cases in which ICE gets results from looking at the databases that look as though they do not form a basis for an arrest. But that consistently using those databases, there is no reliability that those databases do not show that a sufficient number of individuals are being picked up who do have status or citizenship. Then those databases are reliable under Gonzalez. And so the fact that the immigration officers checked those databases, those databases came back and said there was a basis for them to, what, to arrest the petitioner in this case, in the absence of any question as to those reliability, or any serious questions with regard to those reliability that the petitioner put forward. So without, your position basically is we don't need to know what those databases showed or would have showed, I mean, other than the representation that these are the types of databases that will That is correct, Your Honor. Okay, what case tells us this? Gonzalez. I think it's, what, 976 F3rd, and I can't remember the remaining of it. But it's Gonzalez versus U.S. ICE. It's a detainer case, in fact. And it was a case in which there was a class action challenge against detainers that were being used by ICE, that they were relying on these various databases, and they had 16 databases, and contained among them were CIS claims, both claims three and four, claims generally, kind of fall under, they both fall under that heading, techs, NCIC, and, you know, and some others, including EOR databases and the like. And one of the things, and the district court judge found that I put in place an injunction against ICE using those databases to detain individuals, to put in place detainers of individuals who were either being held in jails or being held in prisons, to prevent them, to keep them from issuing the detainers, because there was no probable cause behind them. And part of the reason why, at least with regard to one of the classes, was that those databases did not give rise to probable cause. This court overturned the district court's analysis of those databases, wasn't sufficient to impugn the, at that point, it was not sufficient to impugn the reliability of those databases. That, in fact, what the district court had to be, had to do, and what the district court had to establish, was that you had to have, that you had to establish there was a sufficient, a sufficient error rate, an error rate sufficiently high, that it would undermine the reliability of those databases to generate probable cause. It didn't say what, how high that needed to be, and it sent it back to the district court to determine, you know, whether or not those databases were or were not reliable. And the district court only analyzed a handful of those databases, not all of them. Can you address, in the government's database printout, I think AR 1659, the language is a little bit cagey. It says, what appears to be NCIC. I mean, can you explain that? So, NCIC printout kind of looks a particular way. Is this NCIC printout here, what we have? It looks like it would be an NCIC printout, but the problem is, is that we don't have a, the, it's, what the printout is of is redacted. So, looks like it's an NCIC printout, but I can't tell you for certain, because I don't know. So, based, that would mean, you know, at best I can say it looks like one. I can't tell you that it necessarily is one, because I don't have that information across the top. It's based upon other ones that I've seen in other cases, but that's, that's. I take your position would then be, but it doesn't even matter at all, because we're working with a database that's presumptively reliable. Right, exactly, and the NCIC printout anyway would tell us what, would give us what the Arizona State Police had put into the record, which would include his birthplace in Mexico. So, or, and the, and the lack of a social security number. So, that would turn up anyway in the NCIC printout with, regardless, because that's part of the information that's compiled by the NCIC. Go ahead. Can you address, your friend on the other side suggested that the ICE agents didn't actually consult the databases. It's maybe a factual issue in what's in the record. Can you address that? Yes, in the I-213 expressly. So, there are two places in which databases are mentioned in the I-213. There's one set of databases with negative, that respond with some being negative and a couple of them being positive, and that set of databases, there's a that were consulted for the basis of probable cause. I believe that's, we know which ones were consulted prior to the arrest, because those are the ones in the negative. I mean, sorry, those are the ones in the narrative. The other five databases later, you know, that are listed, I believe are ones that were consulted after the arrest and they ran once they had him in their custody. So, if you look, it's on, I think it's the first page, or maybe the first page of the I-213, or maybe the second page. And then the last page of the narrative, it's a sentence right at the very bottom of that narrative. In your experience with these I-213s, I'll ask your opposing counsel to this, how does this rank in terms of the thinness of the basis for saying that this person was not present here lawfully? Is there usually more to it than what we see here? It depends, because every one of these cases is different. Sometimes I see ones that are really, really long, and some of these are pretty short. Essentially, you know, oftentimes, you know, it's someone who's encountered, say, for example, on the border, or someone who's encountered, you know, and picked up, and they give this lengthy statement once they've been picked up at the border, and that's going to be a different type of situation than someone who's been picked up through a database. I'm not, I honestly haven't paid too much attention to any of the, and I haven't seen that many of the database, well, the database I-213s, because it hasn't, those haven't come up as issues, so I haven't really attended to them, if that makes sense. Why didn't the ICE officers testify, or why was the government opposing the I-213s? I think, usually, I suppose these subpoenas, it's hard to get the officers in. The officers are generally involved in other enforcement activities. I think they would prefer not to, unless they're required to by the immigration court. That's generally the case, and they think that, you know, there's a presumption of administrative regularity that the I-213s can speak for themselves, so there's not really, they, if ICE officers were required to come in and testify for every I-213, they think that would be disruptive to the ability of ICE officers to generally carry on their administrative functions. But presumably, the IJ is not going to ask for that testimony in every case, only when they think they really need it, which points out, in this case, I think the difficulty of really understanding how the databases that were consulted could establish probable cause. Presumably, they could have helped with that understanding before the IJ. They definitely could have helped with the understanding, Your Honor, but we don't have to go that far. I mean, unless we have some basis to believe that, in this case, or generally, those databases are not reliable for determining whether or not someone, whether or not their individual has alienage and is removable, then we don't have to go, we don't have to dig down to discover what that is. What is the significance of the negative under, on a few of these records checked? So, it's interesting. Like, CIS is this database, if I remember correctly, of people who have filed for benefits with USCIS. You know, I don't believe it contains naturalization, but it contains things like various forms of non-immigrant status, lawful permanent residence status, all of those kinds of things are contained in this broader database. And so, getting a negative from that database, like CIS, tells you that someone has not sought a benefit before USCIS, or claims someone has not sought naturalization before USCIS. The inference from those databases is someone has not sought or obtained lawful status. They don't tell you whether or not, they don't necessarily tell you whether or not someone is here or not, or they don't tell you whether someone who is a citizen, for example, that person would never have, would never come up against CIS or claims, because unless they're seeking a certificate of citizenship, they would never appear in claims because that's not what claims covers. Whereas NCIC may say, may tell you that someone is born in Mexico if a state has recorded that information, or might tell you that someone doesn't have a social security number. If a state records that information. And so, compiling this information together, even if you have negative, the fact that you have a negative with CIS or claims indicates person hasn't sought lawful status or doesn't have lawful status. The other side is the criminal databases indicate, can tell you where a person is born, and you can sort of add that together to tell you whether an individual is in the CAO, was born abroad, is in the country with a social security number, some indication that they might have citizenship in the United States, and that they haven't sought any lawful status. You put that together, and you can, and that would seem to give you the answer to whether or not you have probable cause in a particular case. Going back to the I-213 form, your basis to say that it refers to the, that they consulted the databases, the line that says immigration record negative, so that would suggest they looked at the database, is that what it is? I think, so you have two, they, there's two different places where they're looking, and those databases aren't coextensive, the ones that they look at before and after. The ones they look at before are the ones that they rely on, but those databases are CIS. Before you do that, but as reflected in the form is the line that says immigration record, and it says negative on the I-213, the first form, is that what you're, is that what you're referring to? That's what I'm referring to. Okay. I thought you were referring to the part that says records checked, and then list. Oh, that one, that one, yes, your honor, that's it, yes, yes, your honor. I mean, immigration negative, I, immigration record negative, I took to be just the conclusion that they reached, not necessarily, you know, the reason they gave. Right, it just means they don't have any records of it. What about the anonymous tip? What work does that do here? So, anonymous tips on their own, standing alone, would be problematic. I think that anonymous tip, as far as giving a basis for the database check, look, as, as you said, your honor, if you're calling an ICE hotline to tell someone about, about an individual who has left prison, and you give them a name and so on and so forth, it's pretty, I believe it's implicit in calling the ICE hotline that you're reporting someone you believe not to have lawful status in the United States, or at least that there's some reason to go and, you know, maybe go and check on this, at the very least. And that's, that's, that's all that we take the anonymous tip, that's the value of the anonymous tip, is that it just is a, it simply provokes ICE to go in a particular direction, and is some indication that someone thinks there's some basis for ICE to go forward and look into an individual as to whether or not they are, they are lawfully present in the U.S. What about the O case? Um, I think, if I'm remembering correctly, I don't think that impugns this, the decision here, if I remember correctly, that involved people who were actually, you know, the, that ICE would be called based upon Nigerian individuals, and then they would go and investigate the, they were, they would basically go and investigate. And it seems that there was a much more, how to put it, that the anonymous tip was the basis for them arresting and going forward from there, largely was the, was the precipitating factor where, or was the overwhelming factor whereas here, this is sort of, you have these database checks on the other side. And really, even if the tip itself has problematic aspects, um, ICE can receive, can receive tips all the time, anonymous tips regularly. It can't just rely on the anonymous tips. And the reliance on the database itself alone provides the sufficient basis for probable cause here. Um, if the court has no other questions for me, or doesn't have any questions about any other aspects of the case, the government will rest. Great. Thank you so much. I have two points. Um, first at page 15, 16 and 17 of my opening brief, that's where I cite the Gonzalez case and actually cite it for, um, to support Mr. Nova's position. That's where there's a breakdown of the three different data, the databases, and significantly in the district court says, quote, these databases do not provide indicia of citizenship or to establish probable cause for removal. That's at page 15 of the opening brief. Um, that part was overturned on different grounds that was not rebuked by this court. The second point is on the I-213. Um, again, as an officer of the court, I can verify that typically the immigration history would show if there's a prior removal order, and that is enough for sufficient or for, for probable cause. The, the claim negative and the CIS negative usually will have the, the date of the person's first entry into the United States and the manner of their entry, which is why it's so significant. This, this record simply has no data. And under the O case, that is where the Ninth Circuit is very clear that, um, uh, the absence of any record of a person's entry into the United States from the INS computer system did not provide an additional basis to suspect that they were illegal alien rather than a legal alien or a U.S. citizen. There are no further questions. Just quickly, how do you, uh, how do you address the portion of the was mentioning about reliance on presumptively reliable databases? We don't have an issue with the reliability of the databases, but for Mr. Inova, they have to show what's in it. And here, when there is simply, this is where it's, it's controlled by the old case. When you have three negative hits with no further information on this record, there's no specific articulable fact. And that is the standard under the regulations and under the regulations that this record is violated. Great. Thank you both for the helpful arguments. The case has been submitted and we are recessed for the day.
judges: LEE, BRESS, Tunheim